**SIGNED THIS: December 6, 2016**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CENTRAL ILLINOIS ENERGY ) | Case No. 09-81409 |
| COOPERATIVE, ) | |
|                 Debtor. ) | |
| ) | |
| _____) | |
| ) | |
| A. CLAY COX, not individually but as Trustee ) | |
| for the estate of Central Illinois Energy ) | |
| Cooperative, ) | |
| ) | |
|                 Plaintiff, ) | |
| ) | |
|     vs. ) | Adv. No. 11-8027 |
| ) | |
| MICHAEL W. SMITH, ) | |
| ) | |
|                 Defendant. ) | |

# **O P I N I O N**

This matter is before the Court on the motion of the defendant, Michael W. Smith, to dismiss the First Amended Complaint filed by the plaintiff, A. Clay Cox, as Chapter 7 Trustee for the estate of Central Illinois Energy Cooperative (Co-op).

1

A.  **Factual and Procedural Background**

As alleged in the First Amended Complaint, the Co-op was created by a group of farmers in 2001 as an association formed under the Illinois Agricultural Cooperative Act (ACA), 805 ILCS 315/1 et seq., with a stated corporate purpose to construct and operate an ethanol facility to process its members' corn into ethanol and other byproducts and to purchase and otherwise deal in the corn produced by its members. By definition, an agricultural cooperative association is a form of nonprofit corporation. 805 ILCS 315/2. Smith was one of the Co-op's incorporators, was a director from its inception until December, 2007, and served as its president and general manager.

In 2004, the Co-op's principals formed two additional entities, Central Illinois Energy, LLC (Opco) and Central Illinois Holding Company, LLC (Holdco), as Delaware limited liability companies. Thereafter, Opco undertook responsibility for constructing the ethanol plant, while the Co-op undertook responsibility for constructing a grain handling facility adjacent to the ethanol plant property, which grain handling facility was necessary to supply corn to the plant to be processed into ethanol and related byproducts. Opco entered into an agreement with Lurgi, Inc. to design and construct the ethanol plant. The Co-op entered into an agreement with Nostaw, Inc. to construct the grain handling facility. Smith was named general manager of both Opco and Holdco. The Co-op owned the majority interest in Holdco, which was the sole member of Opco. Both the ethanol plant side of the project and the grain handling facility side, which had separate sources of financing, experienced financial difficulties that led to the collapse of the entire project before it became operational. Opco filed a voluntary bankruptcy petition on December 13, 2007. An involuntary bankruptcy petition was filed against the Co-op on May 1, 2009.

The First Amended Complaint includes seven counts. Each count focuses on a separate transaction or series of transactions engaged in by Smith resulting in a quantified loss allegedly suffered by the Co-op and/or its creditors. The total damages alleged in the seven counts is $4,567,914.

The same general theory of liability against Smith is alleged in each count, that the transactions engaged in by Smith were in violation of his fiduciary duties of loyalty, good faith and due care that flowed from his status as the Co-op's general manager and a member of its board of directors. It is alleged in the First Amended Complaint that Smith owed those duties to both the Co-op and its creditors. This is a significant departure from the initial complaint which alleged only that the duties were owed to the creditors of the Co-op once the Co-op became insolvent or entered the zone of insolvency. The First Amended Complaint further alleges that Smith owed the same fiduciary duties to Opco and Holdco and was thus burdened with a conflict of interest such that Smith and the other shared directors "operated the Co-op in a manner that was contrary to its best interests or those of its creditors and conferred benefits on Opco and Holdco that they would not have received had Smith and the shared directors been fully independent."

The initial Complaint, filed on April 19, 2011, alleged a single-count cause of action against Smith for breach of fiduciary duties owed to creditors, focusing on certain payments made by the Co-op for the benefit of Opco and Holdco, and on the sale of the Co-op's assets in June, 2007, to Green Lion Bio-fuels, LLC (Green Lion). The initial complaint was eight pages long. The First Amended Complaint, thirty-seven pages long, was filed on May 18, 2016, following the substantial completion of discovery. While the filing of an amended complaint relatively late in this proceeding has given Smith the opportunity to raise issues of Illinois law

relating to the fiduciary duties owed by directors and officers of an agricultural cooperative association as grounds for dismissal, these issues would have been necessary to address before trial in any event and will continue to be developed and refined as this litigation proceeds.

### B. Analysis

#### 1. General Principles of Law

The purpose of a Fed. R. Civ. P. 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Indiana University School of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). Dismissal is proper only when the complaint lacks either a cognizable legal theory or fails to allege sufficient facts under a cognizable theory. *Bielskis v. Louisville Ladders, Inc.*, 2007 WL 2088583 (N.D. Ill.)(citing *Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir. 1995)).

Fed. R. Civ. P. 8, providing that the statement of a claim for relief shall be "short and plain," does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The complaint must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). The Seventh Circuit Court of Appeals has interpreted the Supreme Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In his motion to dismiss, Smith asserts both alternative grounds for dismissal, that the complaint fails to allege a cognizable legal theory and that it is factually deficient. The general theory of liability asserted in all seven counts is well-established in Illinois, that directors and officers of a corporation occupy a fiduciary relation toward it. *Shlensky v. South Parkway Building Corp.*, 19 Ill. 2d 268, 278 (1960). They are effectively charged with being trustees of the corporation's business and property for the benefit of the shareholders. *Dixmoor Golf Club, Inc. v. Evans*, 325 Ill. 612, 616, 156 N.E. 785 (1927). The fiduciary duties include duties of loyalty and good faith. *Patient Care Services, S.C. v. Segal*, 32 Ill. App. 3d 1021, 1029, 337 N.E.2d 471 (Ill. App. 1 Dist. 1975*); Maercker Point Villas Condominium Ass'n v. Szymski*, 275 Ill. App. 3d 481,484, 655 N.E.2d 1192 (Ill. App. 2 Dist. 1995). In addition to their fiduciary duties of loyalty and good faith owed to the corporation and its shareholders, directors must exercise in the management of corporate affairs the degree of care that prudent persons, prompted by self-interest, would exercise in the management of their own affairs. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015, 636 N.E.2d 616 (Ill. App. 1st Dist. 1993).

A cause of action against a director or officer for damages suffered by a corporation caused by a breach of a fiduciary duty is typically brought as a shareholder derivative action. A derivative action is brought by a nominal plaintiff on behalf of a corporation to seek relief for injuries done to the corporation. *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, 56 N.E.3d 509, 517; *Hale v. Chu*, 614 F.3d 741, n.1 (7th Cir. 2010). Once the corporation enters bankruptcy, however, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors become property of the estate and the right to bring a derivative action asserting such claims vests exclusively in the trustee. *Seidel v. Byron*, 405 B.R. 277, 287-88 (N.D.Ill. 2009); *In re Think3, Inc.*, 529 B.R. 147, 187 (Bankr. W.D.Tex. 2015); *In*

*re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006). A trustee has no standing, however, to bring a claim that is personal to a single creditor for damages suffered solely by that creditor. *Fisher v. Apostolou*, 155 F.3d 876, 879-80 (7th Cir. 1998).

### 2. Special Circumstances Duties to Creditors

It is a long-standing principle of Illinois common law that when a corporation becomes insolvent, the directors occupy a fiduciary relation towards the corporation's creditors, so that assets may not be disposed of for less than fair value and if the directors are themselves creditors, they cannot receive any advantage or preference in the payment of their claims at the expense of other creditors. *Atwater v. American Exchange National Bank*, 152 Ill. 605, 613, 38 N.E. 1017 (1893). The fiduciary duties owed to creditors upon insolvency are referred to as "special circumstances" fiduciary duties. *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, 977 N.E.2d 267, 284.

In his motion to dismiss, Smith contends that the special circumstances duties owed to creditors upon insolvency have never been imposed by any Illinois court upon an officer or director of an agricultural cooperative association, so that a cause of action premised upon a violation of those duties is not cognizable under Illinois law. He argues that the special circumstances duties have only been imposed with respect to for-profit corporations, never to nonprofit corporations, and that an agricultural cooperative association is more akin to a nonprofit corporation. Pointing out that, by statute, agricultural cooperative associations are shielded from any provision of law that conflicts with any provision of the ACA, Smith argues that the special circumstances duties conflict with that Act. Smith also argues that the special circumstances duties should not apply to agricultural cooperative associations as a matter of policy, given the remedial purpose of the statute to assist small farmers in order to protect the

nation's food supply as well as the extraordinary power granted to such associations to borrow money without limitation as to amount as provided by section 6(b) of the ACA. Smith argues that the power to incur an unlimited amount of debt implies that an agricultural cooperative association may operate at all times without consideration of the interests of its creditors, even when its liabilities exceed its assets.

In response, the Trustee, while acknowledging that the special circumstances fiduciary duties have never been extended to a cooperative association's officers and directors by an Illinois court, argues that agricultural cooperative associations are more akin to for-profit corporations. He points out that section 31(a) of the ACA expressly provides that the "provisions of the general corporation laws of this State, relating to corporations for pecuniary profit, and all powers and rights thereunder shall apply to the associations organized hereunder, except where those provisions are in conflict with or inconsistent with the express provisions of this Act." 805 ILCS 315/31(a). The Trustee contends that the Illinois Supreme Court would most likely apply the same special circumstances fiduciary duties that apply to the officers and directors of a for-profit corporation, to the officers and directors of a nonprofit agricultural cooperative association. The parties correctly recognize that when a federal court is confronted with a question of state law that the state's highest court has not resolved, the federal court must predict how the state's highest court would decide the issue, and decide it the same way. *MindGames, Inc. v. Western Publishing Co. Inc.*, 218 F.3d 652, 655-56 (7th Cir. 2000).

To the extent that the parties may be assuming that officers and directors of Illinois nonprofit corporations do not owe the same fiduciary duties as officers and directors of for-profit corporations, they are incorrect as the same duties are owed without respect to the nonprofit status of the entity. *Kelley v. Astor Investors, Inc.*, 123 Ill. App. 3d 593, 597, 462 N.E.2d 996 (Ill.

7

App. 2d Dist. 1984); *Mile-O-Mo Fishing Club, Inc. v. Noble*, 62 Ill. App. 2d 50, 57, 210 N.E.2d 12 (Ill. App. 5th Dist. 1965). The Illinois General Not For Profit Corporation Act of 1986 provides that directors and officers are subject to common law duties and responsibilities. 805 ILCS 105/108.85. Further, this Court is aware of no statutory provision or court opinion that indicates that the special circumstances fiduciary duties that apply to officers and directors of an Illinois for-profit corporation upon insolvency, would not apply equally to officers and directors of any Illinois nonprofit corporation upon insolvency. So the fact that agricultural cooperative associations are statutorily designated as nonprofit corporations is immaterial to the issue of whether special circumstances duties apply to officers and directors of such associations.

As correctly noted by the Trustee, Smith is not disputing that officers and directors of an agricultural cooperative association owe fiduciary duties to the association and its members. Smith only disputes that the Co-op's insolvency triggered additional or shifting duties running in favor of the Co-op's creditors. But the First Amended Complaint's theory of liability is premised on the general allegation that Smith owed duties both to the Co-op and its creditors, a significant difference from the one-sided theory alleged in the initial complaint. It follows that even if Smith did not owe, as a matter of law, any duties to creditors, the complaint nevertheless states a plausible cause of action based on an alleged breach of his duties to the Co-op, which duties Smith does not dispute. It should be emphasized that Smith makes no argument that the insolvency of the Co-op operated to eliminate any and all fiduciary duties. Smith's position is only that the insolvency of the Co-op as an agricultural cooperative asociation does not, as a matter of law, trigger shifting or additional duties owed to creditors.

The trust fund analogy used to support the special circumstances duties to creditors upon insolvency, as articulated in early Illinois Supreme Court decisions that proscribe self-dealing by

corporate directors, is framed as a general rule, not limited in application to certain kinds of business organizations. See *Beach v. Miller*, 130 Ill. 162, 22 N.E. 464 (1889); *Roseboom v. Warner*, 132 Ill. 81, 23 N.E. 339 (1890). The burden is on Smith to articulate a valid reason why the Illinois Supreme Court, if the issue came before it today, would carve out an exception for agricultural cooperative associations.

The common law fiduciary duties imposed on corporate directors arose from the recognition that directors are trustees of the corporation's business and its property and are charged with administering the corporate affairs for the common benefit of the shareholders and with exercising their best care, skill and judgment solely in the interest of the corporation and not for their own personal gain. *Shlensky*, 19 Ill. 2d at 278. The duties flow to the shareholders during solvency, rather than to creditors, because solvency affords collectibility to creditors, with the shareholders having the residual claim to the corporation's equity value. *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. 646, 652-53 (Bankr. N.D. Ill. 1998) (applying Delaware law). The economic rationale for the "insolvency exception" is that the value of creditor contract claims against an insolvent corporation may be affected by the decisions of the managers, and since at that point the shareholder interest has no value, it is the creditors who occupy the position of residual owners. *Id.*

This is not to say, of course, that insolvency triggers a duty to liquidate or that the creditors become the sole or even the predominant constituency. As pointed out in *Ben Franklin*, insolvency does not shift the fiduciary duties solely to creditors. Rather, the directors still have an obligation to the community of interests, of which creditors are one part, to exercise judgment in an informed, good faith effort to maximize the corporation's long-term wealth creating capacity. *Ben Franklin*, 225 B.R. at 654-55. Insolvency does not trigger a mandatory duty to

liquidate the assets for the benefit of unsecured creditors; rather, the officers and directors may continue to pursue other avenues in a good faith attempt to regain solvency. *In re RSL COM PRIMECALL, Inc.*, 2003 WL 22989669, *8 (Bankr. S.D.N.Y.).

This Court sees no reason why the full panoply of common law duties and rules that apply to for-profit and other nonprofit corporations should not, as a general matter, apply equally to agricultural cooperative associations, including the special circumstances duties that occur upon insolvency. Requiring officers and directors to consider the impact on creditors of a particular transaction or course of action when the entity is insolvent, is a normative rule tied to their position of authority, unrelated to the organizational nature of the entity on whose behalf they act. In addition, in this particular instance, the Co-op's purpose was to construct and operate an ethanol production facility, a business model far-removed from the egalitarian purposes behind the ACA when it was conceived and adopted in the 1920's. Contrary to Smith's arguments, there is no justification for treating creditors of a business enterprise such as an ethanol production facility, less favorably, simply because an agricultural cooperative association was involved in the project.

Moreover, the concept that insolvency triggers a "shift" in favor of creditors is now recognized by Delaware courts as primarily dealing with creditor standing to bring a derivative action, and does not give rise to new duties unique to creditors. "The fiduciary duties that creditors gain derivative standing to enforce are not special duties to creditors, but rather the fiduciary duties that directors owe to the corporation to maximize its value for the benefit of all residual claimants." *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 176 (Del. Ch.2014) (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007)). Viewed in this light, it is apparent that the "special circumstances duties" owed

upon insolvency are hardly different from the ordinary fiduciary duties owed during solvency. This is yet another reason why the Illinois Supreme Court would apply the same duties in the same way to all types of organizations, including agricultural cooperative associations.

Returning to Smith's specific arguments, he focuses upon the ACA's grant of power to agricultural cooperative associations to borrow money "without limitation as to amount of corporate indebtedness or liability," 805 ILCS 315/6(b), whereas the Illinois Business Corporations Act (BCA) empowers for-profit corporations to borrow, 805 ILCS 5/3.10(h), but, as he points out, the power is not expressly "without limitation as to amount." This is a difference without a distinction. None of the statutory grants of borrowing power for Illinois for-profit corporations, nonprofit corporations and limited liability companies, contain any limitation or ceiling on the amount that may be borrowed. Each of these entities, like an agricultural cooperative association, has the power to borrow itself into insolvency if it can find a willing lender. Smith's contention that the power to borrow granted to these other entities is somehow limited, based on the different language used in the ACA, a proposition for which Smith cites no case law, is not correct. His argument is based on a false premise and is readily rejected.

Smith also relies upon section 22 of the ACA which provides that "any provisions of law which are in conflict with this Act shall be construed as not applying to the associations herein provided for," 805 ILCS 315/22, and section 31 of the ACA which provides that the provisions of the general corporation laws apply to agricultural cooperative associations "except where those provisions are in conflict with or inconsistent with the express provisions of this Act." 805 ILCS 315/31(a). Smith contends that the special circumstances fiduciary duties conflict with the policy, purposes and provisions of the ACA, the Co-op's nonprofit designation and the policy promoting the sale of farm products. He argues that the statutory provision empowering the

11

associations to incur debt "without limitation" cannot be reconciled with extending the fiduciary duties to creditors.

These conflicts that Smith conjures are imaginary. As discussed above, the authority to borrow "without limitation" gives an agricultural cooperative association no greater borrowing authority than other types of organizations. Neither is it reasonable to assume that the provision reflects a legislative intent to encourage such associations to borrow their way into insolvency so as to better fulfill their mission. Nor may it reasonably be construed as some sort of backhanded indication of an intent to insulate officers and directors from liability to creditors for breach of a fiduciary duty, while retaining the liability as to the association itself. (Why is it good policy to encourage management not to consider the interest of creditors during periods of insolvency?) Moreover, insolvency by itself would not impose strict liability upon the managers, as Smith seems to suggest. Liability follows only upon proof of breach of one of the duties resulting in a provable financial loss.[1]

This Court has little difficulty predicting that the Illinois Supreme Court is likely to hold that directors and officers of an agricultural cooperative association owe the same fiduciary duties to creditors upon insolvency that they owe to the association at all times without regard to solvency.

### 3. ACA Section 6(d)

Counts I through V of the First Amended Complaint each include the allegation that Smith's conduct was in violation of section 6(d) of the ACA, which accords each association the power "[t]o make loans or advances to members or stockholders and/or to their members or

---

[1] Exactly how and to what extent the interests of the various creditors were to be taken into account by Smith as the Co-op's general manager remains to be decided in future proceedings. Case law indicates that the fiduciary duties even during insolvency are primarily directed at prohibiting preferential and fraudulent transfers and self-dealing by the managers. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 315 (Ill. App. 1 Dist. 2002); *In re Joseph Walker & Company, Inc.*, 522 B.R. 165 (Bankr. D.S.C. 2014); *In re Security Asset Capital Corp.*, 396 B.R. 35 (Bankr. D. Minn. 2008).

stockholders or to their producer patrons ….″ 805 ILCS 315/6(d). Those five counts allege transactions caused, directed or approved by Smith, whereby the Co-op's funds were used to pay obligations owed by Holdco and Opco, neither of which was a member, stockholder or producer patron within the scope of section 6(d), so that Smith's actions were in violation of that provision.

Smith contends that the Trustee's reliance upon section 6(d) is directly contradicted by section 6(i) of the ACA, which provides that agricultural cooperative associations, in addition to the specific powers listed in sections 6(a) – (h), have the power "to do each and everything necessary, suitable or proper for the accomplishment of any one of the purposes, or the attainment of any one or more of the subjects herein enumerated, or conducive to or expedient for the interest or benefit of the association, and to contract accordingly …." 805 ILCS 315/6(i). Smith argues that section 6(d) is properly construed as permissive rather than restrictive. He also argues that even if the Co-op advanced its funds on behalf of Opco or Holdco, those financial decisions by themselves do not rise to the level of a fiduciary breach.

In response, the Trustee contends that section 6(d) is restrictive rather than permissive. He further contends that even if section 6(d) is permissive, the advances to Holdco and Opco violated section 6(j) of the ACA, which prohibits agricultural cooperative associations from dealing in products, handling machinery, equipment or supplies, or performing services "for and on behalf of non-members to an amount greater in value" than it deals in, handles or performs for its members. 805 ILCS 315/6(j). The Trustee also alleges that a violation of a statute can be the kind of "special circumstance" that causes officers and directors to owe a company's creditors fiduciary duties.

In reply, Smith asserts that the funds advanced by the Co-op for the benefit of Opco and Holdco were in furtherance of the Co-op's organizational purpose -- to construct and operate an ethanol distillery that would purchase corn grown by the Co-op's members and, as such, could not have been wrongful. Smith also contends that section 6(j) does not apply to the advancement of funds for the benefit of Holdco or Opco. He also disputes the Trustee's contention that, in addition to insolvency, violation of a statute is a special circumstance that triggers the extension of fiduciary obligations to creditors.

Counts I through V of the First Amended Complaint each allege the same theory of relief, seeking to impose personal liability on Smith for using Co-op funds to pay obligations of Holdco and Opco. The theory of liability is for breach of the fiduciary duties of loyalty, good faith and due care owed by Smith to the Co-op and its creditors. Each count adequately identifies the particulars of the challenged transfers, including the exact amount of alleged damages. Each count contains the allegation that the Co-op was insolvent at the time the challenged transfers were made, which means that the special circumstances duty to creditors has been adequately pleaded, irrespective of whether the alleged violation of section 6(d) is an additional "special circumstance."

Without considering the reference to section 6(d) of the ACA, each of Counts I through V alleges a recognized cause of action supported by sufficient factual allegations so as to meet the plausibility standard of *Iqbal* and *Twombly*. But has the Trustee tainted an otherwise properly pleaded cause of action by adding a reference to section 6(d) in each of the five counts? Has he pleaded himself out of court? Smith thinks so, but the Court disagrees.

Smith treats the additional allegation of section 6(d) as superseding the underlying cause of action, as if the Trustee's theory of relief switched to one of strict liability for violating a

14

statutory prohibition, so that if it could be established that the statute did not apply or was not violated then the entire claim would fail. Smith misreads the First Amended Complaint. Nowhere does the Trustee allege that section 6(d) creates a private right of action. Neither does he make that argument in response to Smith's motion to dismiss. It is readily apparent that section 6(d) does not meet the requirements for implication of a private right of action. *See Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 391-96, 718 N.E.2d 181 (1999).

With good reason, the First Amended Complaint does not allege that Smith's violation of section 6(d) gives rise to strict liability or amounts to negligence *per se*. In Illinois, only statutes designed to protect human life or property place higher burdens on violators so that a violation of such a statute is *prima facie* evidence of negligence. But a violation even of a safety statute does not constitute negligence *per se*. *Id.* at 394-95; *Magna Trust Co. v. Illinois Cent. Ry. Co.*, 313 Ill. App. 3d 375, 383, 728 N.E.2d 797 (Ill. App. 5 Dist. 2000). Under general principles of corporate law, where an act is expressly prohibited by a statute but liability for a violation is not expressly imposed on the officers or directors, the doing of the act does not make the officers or directors personally liable merely because the act is a violation of the statute. 3 **Fletcher Cyc. Corp**. sec. 1024. The Trustee's assertion in his responsive memorandum of law that if it can be proved that Smith acted in violation of section 6(d), "that violation of a statute is a breach of Smith's fiduciary duties to the Co-op's creditors," is not correct, since the statute does not impose personal liability on the directors or officers.

So to what effect is the Trustee's allegation in the First Amended Complaint of a violation of section 6(d)? As noted above, section 31 of the ACA makes all the non-conflicting provisions of the BCA applicable to agricultural cooperative associations. As provided by section 3.15 of the BCA, the fact that a corporation took an act that was beyond its powers may

15

be asserted in a proceeding by the corporation, even if acting through a trustee, "against the officers or directors of the corporation for exceeding their authority." 805 ILCS 5/3.15(b). Since Illinois courts hold that the violation of a statute, absent an expression of strict liability, is, at most, only evidence of negligence, the Trustee's allegation of a violation by Smith of section 6(d) will be treated as akin to pleading evidence of a breach of a fiduciary duty. Since Counts I through V, even without the allegation of section 6(d), state a recognized and plausible cause of action, the reference to section 6(d) in those counts is in effect surplusage. Its inclusion in Counts I through V does not change or detract from the cause of action for breach of fiduciary duties, and it certainly does not render an otherwise properly pleaded claim dismissible. The Trustee has not pleaded himself out of court.[2]

It follows that the parties' arguments about the apparent conflict between ACA sections 6(d) and 6(i), and the applicability of section 6(j), are premature. It is unnecessary to address those arguments in order to resolve the motion to dismiss. What role, if any, those provisions might play in determining whether Smith breached a fiduciary duty will be addressed in future proceedings.

### 4. ACA Section 15.8(a)

The next basis for dismissal asserted by Smith relates to section 15.8(a) of the ACA which provides immunity to directors from liability for damages resulting from the exercise of judgment or discretion, unless (1) the director is compensated more than $5,000 per year as a director, or (2) the act or omission involved willful or wanton conduct. 805 ILCS 315/15.8. Smith points out that the First Amended Complaint fails to identify whether the challenged

---

[2] Even if the Trustee included the reference to ACA section 6(d) in the First Amended Complaint with the belief that proof of a violation of that section would impose strict liability upon Smith, that mistaken belief is not grounds for dismissal so long as the allegations otherwise plausibly state a viable cause of action. A motion to dismiss tests the sufficiency of the complaint's allegations, without regard to the plaintiff's perceptions about how he intends to argue his case as the litigation proceeds.

16

conduct of Smith was done in his capacity as a director or as general manager of the Co-op. Recognizing that section 15.8(a) provides immunity only to directors, Smith contends that to the extent the Trustee's claims relate to Smith's conduct as a director, the First Amended Complaint fails to plead facts sufficient to negate the statutory immunity provided to directors.

In response, the Trustee, while acknowledging the issue raised by Smith's dual status, asserts that Counts I through V and VII are directed to his conduct only as general manager, not as a director of the Co-op. As to Count VI, the Trustee states that the allegations concerning the sale of the Co-op's assets to Green Lion demonstrate Smith was acting as the manager and not as a director, but also demonstrate that Smith was acting "outside his authority" as a director when he "personally sanctioned the sale of the Co-op's grain handling facility to Green Lion." The Trustee then proceeds to argue the merits of section 15.8, contending that Smith's conduct is willful and wanton within the meaning of section 15.8(b).

Neither party considers that the statutory immunity accorded directors is an affirmative defense, which it undoubtedly is. Under Illinois law, affirmative defenses include any statute that prevents an otherwise valid claim from being recovered upon. 735 ILCS 5/2-613(d). A statutory immunity from suit or liability is an affirmative defense that must be pleaded and proved by the party seeking its protection. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54, 962 N.E.2d 418.

In federal court, complaints need not anticipate defenses and attempt to defeat or plead around them. Complaints need not contain any information about defenses and may not be dismissed for that omission. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Only in the unusual circumstance where a plaintiff pleads itself out of court, by admitting all the elements of an absolute defense, may a complaint that otherwise states a claim be dismissed, and even then only upon a motion for judgment on the pleadings under Fed. R.

17

Civ. P. 12(c), not upon a motion to dismiss under Rule 12(b)(6). *Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2002).

So Smith's contention that the First Amended Complaint should be dismissed because it fails to negate the statutory immunity accorded to directors is without merit. It is not necessary at this time to address the merits of the arguments made by the parties concerning section 15.8(a) and (b) of the ACA. Moreover, in light of the Trustee's characterization of his claims against Smith as being directed against Smith's conduct as general manager, the Trustee may be willing to stipulate that he seeks no relief against Smith as a director, which would take section 15.8 off the table. If the Trustee is not willing to make that stipulation, it will remain an issue of fact to be proved at trial whether Smith was acting as a director or as general manager at any particular point in time with respect to each challenged transaction.

### 5. A General Allegation of Insolvency is Permissible

The final basis for dismissal asserted by Smith, directed only at Count I, relates to the timing of the Co-op's alleged insolvency. Smith asserts that Count I alleges a breach of the special circumstances fiduciary duties owed to creditors upon insolvency, that the date of insolvency used by the Trustee is March 1, 2007, and that the advances made by the Co-op in Count I pre-date March 1, 2007, so that Count I fails to state a plausible claim given that the challenged transactions occurred before the special circumstances duty could have arisen.

Smith's argument falters for two reasons. First, he ignores the duality of the theory of relief, as pleaded. The cause of action stated in each of the seven counts is the same: breach of fiduciary duties "owed to the Co-op and its creditors." The duties of loyalty, good faith and due care exist at all times without regard to the entity's solvency. The only change caused by insolvency is that the directors and officers must then take into account the interest of creditors

as an additional constituency when making decisions and taking actions for and on behalf of the organization. *Caulfield*, 2016 IL App. (1st) 151558, ¶ 42; *Quadrant*, 102 A.3d at 171-76. If, in fact, the transactions that are the subject of Count I occurred when the Co-op was solvent, then Smith was not obligated to consider the effect on the Co-op's creditors, but he still owed the same duties of loyalty, good faith and due care to the Co-op and its members. Count I adequately alleges a breach of those duties whether the Co-op was solvent or insolvent. Smith apparently, and incorrectly, assumes that a claim for a pre-insolvency breach is a distinct cause of action, separate from one for a post-insolvency breach.

All of the elements of a claim for a pre-insolvency breach of the fiduciary duties are included within a claim for a post-insolvency breach, with the difference being the addition of the allegation of insolvency, which does not change the nature of the claim itself. For purposes of Fed. R. Civ. P. 12(b)(6), it is thus permissible for a plaintiff to include in a single count, combined allegations for breach of the fiduciary duties during periods of solvency and/or insolvency. Moreover, in light of the difficulty of establishing exactly when insolvency occurred, which is usually a matter of expert opinion, it would make no sense at the pleading stage to require a plaintiff to separate the alternatives based upon a supposition about the timing of the entity's insolvency. The First Amended Complaint puts Smith on notice that the Trustee is asserting a breach of the fiduciary duties for pre-insolvency and post-insolvency conduct. That is all that is required at this stage.

Second, nowhere in the First Amended Complaint does the Trustee allege any particular date that the Co-op became insolvent. To the contrary, he alleges generally that the Co-op was insolvent at the time of each challenged transfer. The March 1, 2007 date of insolvency is the opinion of an expert accountant retained by the Trustee. That opinion, however, has never been

adjudicated to be correct and has never been used by the Trustee in this adversary proceeding. It is not the law of the case and judicial estoppel does not apply. Thus, the Trustee, who has not even asserted that opinion in this adversary proceeding, is not bound by it. Smith's reliance on the accountant's opinion, at this stage of the proceeding, is misplaced. Moreover, to the extent it becomes relevant, the date or dates of the Co-op's insolvency is an issue of fact not subject to determination upon a Rule 12(b)(6) motion. The Trustee's general allegation of insolvency is sufficient at this stage.

### C.     Conclusion

Each of the seven counts states a claim against Smith for breach of fiduciary duties, duties owed at all times to the Co-op and upon insolvency to the Co-op's creditors as well. If a breach is proved, the Trustee has standing to recover damages that he can prove were caused by the breach and suffered by the Co-op itself and/or by the Co-op's creditors. What effect, if any, the interest of creditors had or should have had on Smith's decisions and actions post-insolvency remains to be determined at later stages of this proceeding.  Smith's motion to dismiss the First Amended Complaint will be denied and he will be given 21 days to answer.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###